UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RADHIKA POCHAMPALLY, | Case No. 2:17-CV-2895 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| JANE C. ETTINGER BOOTH, et al., | |
| Defendant(s). | |

Presently before the court is defendants Jane C. Ettinger Booth ("Booth") and Booth & Booth, APLC's ("Booth & Booth") motion to dismiss (ECF No. 10). Plaintiff Radhika Pochampally ("Pochampally") filed a response (ECF No. 18), to which defendants replied (ECF No. 20).

Also before the court is defendants' motion to change venue (ECF No. 12). Plaintiff filed a response (ECF No. 18), to which defendants replied (ECF No. 20).

**I.    Background**

Plaintiff and Dr. Vijyaendra Jaligam ("Dr. Jaligam") married in 1997 and separated in December of 2007. (ECF Nos. 1, 10). In May of 2008, Dr. Jaligam filed a "Petition for Divorce Pursuant to Code Article 102" in the Civil District Court for the Parish of Orleans, State of Louisiana and thereafter obtained a divorce on July 18, 2008. (ECF No. 1. at 4, 5). Plaintiff and Dr. Jaligam were awarded joint custody of the children and plaintiff was awarded residential custody of the children. (ECF No. 1). A protracted custody battle ensued between the plaintiff and Dr. Jaligam that is the genesis of this dispute. (ECF No. 10).

In June and July of 2008, plaintiff met with defendants to discuss legal representation in family law matters stemming from her divorce. (ECF No. 1). Booth is an attorney licensed to

practice law in Louisiana and is a part owner of Booth & Booth, a Louisiana professional law corporation. (ECF Nos. 1, 10). In July of 2010, Dr. Jaligam retained defendants as counsel for all future custody disputes with plaintiff. (ECF No. 1). Plaintiff subsequently alleged that defendants should be disqualified from the representation based on plaintiff's prior consultation with the defendants. (ECF Nos. 1, 10). After raising this allegation in a "Rule to Disqualify Attorney" filed by plaintiff's attorney, plaintiff's attorney dismissed the allegation on August 24, 2010. (ECF No. 10 at 3). Plaintiff raises this disqualification issue again in her complaint. (ECF No. 1 at 5, 12).

On July 31, 2012, plaintiff sought and obtained permission from the Civil District Court for the Parish of Orleans to move from Louisiana to Jackson, Mississippi, with her children. (ECF Nos. 1, 10). The Civil District Court for the Parish of Orleans retained jurisdiction over future custody matters. (ECF No. 10). Plaintiff alleges that shortly after she moved to Mississippi, defendants, as counsel for Dr. Jaligam, engaged in malicious prosecution through ex parte motions for visitation, modification of custody requests, and contempt motions. (ECF No. 1). Moreover, plaintiff asserts that she was forced to obtain legal representation and protective orders as a result of defendants' actions. *Id.*

In late 2015, defendants brought a motion on behalf of Dr. Jaligam seeking emergency sole custody and suspension of physical custody of the children. (ECF No. 1, 10). A judgment, issued on January 12, 2016, suspended all contact between plaintiff and the children pending professional therapy for plaintiff's previously diagnosed post-traumatic stress disorder. *Id.* The Louisiana Fourth Circuit Court of Appeal affirmed this judgment on December 7, 2016.[1] (ECF No. 10). The custody dispute is ongoing as plaintiff attempts to regain contact with her children. *Id.*

Plaintiff contends that defendants attempted to prevent her from contacting her children by intentionally and maliciously defaming her in communications with court appointed evaluators and therapists. (ECF No. 1). Moreover, plaintiff alleges that defendants made false representations to the Civil District Court for the Parish of Orleans regarding plaintiff's non-

---

[1] *See Jaligam v. Pochampally*, 2016-0249, 206 So. 3d 298 (La. App. 4th Cir. Dec. 7, 2016).

James C. Mahan
U.S. District Judge

compliance with her mandatory therapy requirements.  *Id.*  Plaintiff now sues defendants for several tort claims related to defendants' conduct between July of 2010 and October of 2017. (ECF No. 1).

In support of establishing personal jurisdiction over the defendants, plaintiff contends that defendants contacted her through FedEx and electronic mail after she moved to Las Vegas, Nevada, in September of 2017.  (ECF No. 18).  Furthermore, plaintiff notes that defendants have retained a Nevada law firm as counsel in this matter.  *Id.*  However, plaintiff acknowledges that Booth maintains her primary residence in New Orleans, Louisiana, and Booth & Booth's principal place of business is in Louisiana.  (ECF No. 1).

Booth contends that this court lacks jurisdiction because she has never had a bank account in Nevada, she has visited the state once, and she has never had contact with Nevada in any capacity other than her interactions with the plaintiff.  (ECF No. 10).  Booth also asserts that her interactions with plaintiff were limited to serving pleadings related to the ongoing Louisiana custody dispute.  *Id.*  Additionally, defendants contend that Booth & Booth does not maintain an office or bank account in Nevada and that no attorneys from Booth & Booth have ever handled any cases in the state.  *Id.*

**II.     Legal Standard**

A court may dismiss a complaint for "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  Personal jurisdiction over a defendant is proper when jurisdiction is provided for by law and the exercise of jurisdiction comports with due process.  *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014).  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 134 S.Ct. 746, 753 (2014).  Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with . . . the Constitution of the United States."  Nev. Rev. Stat. § 14.065.

Due process requires the defendant have at least "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  "[T]he defendant's conduct and

James C. Mahan
U.S. District Judge

- 3 -

connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In analyzing whether a defendant has a sufficient connection with a forum state, courts distinguish between general jurisdiction and specific jurisdiction. *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 n.8-9 (1984). General jurisdiction is appropriate where a defendant's activities in the forum state are so "substantial" or "continuous and systematic" that the defendant is essentially at home in the forum. *Daimler*, 134 S.Ct. at 754. "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Where general jurisdiction is not found, a court may still exercise specific jurisdiction if the defendant has sufficient minimum contacts with the forum state in relation to the cause of action. Specific jurisdiction allows a court to hear claims that arise out of a defendant's activities that are directed at the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). The Ninth Circuit has established a three-prong test for determining specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must arise out of or relate to defendant's forum related activities;
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable

*Schwarzenegger*, 374 F.3d at 802.

The plaintiff bears the burden of satisfying the first two prongs. *Id.* If a plaintiff meets this burden, a defendant hoping to defeat jurisdiction must show that the court's exercise of jurisdiction would be unreasonable. *Id.*

The Ninth Circuit "often uses the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. The purposeful-availment

analysis is used for claims sounding in contract, while the purposeful-direction analysis is used for claims sounding in tort. *Id.*

Further, the plaintiff cannot be the defendant's only connection to the forum state. *Walden*, 134 S.Ct. at 1121. "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 1122 (quoting *Burger King*, 471 U.S. at 478).

## III. Discussion

### a. Personal jurisdiction

When a motion to dismiss for lack of personal jurisdiction is based on written materials, "plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Uncontroverted allegations in the complaint are presumed true, and factual disputes are resolved in plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Plaintiff asserts that the court can exercise both general and specific jurisdiction over the defendants in this case. (ECF No. 1). Accordingly, the court will analyze whether defendants are subject to general or specific jurisdiction.

#### i. General jurisdiction

Plaintiff concedes that Booth resides in Louisiana and is licensed to practice law in Louisiana. (ECF No. 1). Moreover, Booth has never practiced law in Nevada, has never had any contact with Nevada apart from contact with the plaintiff, and has visited Nevada only once. (ECF No. 10). Additionally, Booth & Booth is a Louisiana professional law corporation, has never maintained an office in Nevada, and has never handled any cases in Nevada. (ECF No. 10). Plaintiff has failed to offer any evidence showing 'systematic and continuous' contacts with Nevada to meet the "exacting standard" required for general jurisdiction. *See Schwarzenegger*, 374 F.3d at 801.

Plaintiff's contention that defendants' contact through FedEx and retention of Nevada counsel confers general jurisdiction is incorrect. *See Daimler*, 134 S.Ct. at 761. Contact through FedEx is insufficient because "engaging in commerce with residents of the forum state is not in

and of itself the kind of activity that approximates physical presence within the state's borders." *See Bancroft & Masters*, 223 F.3d at 1086; *see also Schwarzenegger* 374 F.3d at 801 (holding that general jurisdiction requires sufficient presence within forum state). Furthermore, retention of Nevada counsel is insufficient to establish general jurisdiction. *See Helicopteros*, 466 U.S. at 418.

### ii. Specific jurisdiction

Plaintiff's complaint raises tort based claims. (ECF No. 1). Therefore, the court will apply the purposeful-direction analysis for specific jurisdiction.[2] *See Schwarzenegger* 374 F.3d at 802. To purposefully direct activities at the forum state, a defendant must (1) commit an intentional act, (2) expressly aimed at the forum, (3) that causes foreseeable harm in the forum. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

The Ninth Circuit defines an intentional act in the context of personal jurisdiction as "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). Courts generally recognize that fraud, slander, libel, and other tort claims are intentional acts. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) (publishing of allegedly defamatory article constitutes an intentional act). Defendants' alleged conduct underlying plaintiff's tort claims – malicious prosecution, abusive litigation tactics, and misrepresentation – are intentional. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1196 (9th Cir. 1988) (uttering of false statements constitutes an intentional act).

Two factors are considered under the "express aiming" requirement. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017). First, "the relationship must arise out of contacts that the defendant himself creates with the forum state." *Id.* at 1143 (quoting *Walden*, 134 S.Ct. at 1122). Second, the analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (quoting *Walden* 134 S.Ct. at 1122). Moreover, "unilateral activity of those who claim some relationship with a nonresident defendant

---

[2] Plaintiff's *pro se* response incorrectly applied purposeful-availment analysis for specific jurisdiction. (ECF No. 18). However, the court will apply the asserted contentions to the purposeful direction framework. *See Erickson v. Pardus*, 551 U.S. 89 (2007) (holding that *pro se* filings are to be liberally construed).

James C. Mahan
U.S. District Judge

- 6 -

cannot satisfy the contact requirement with the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Harms that would have occurred "wherever else the defendant may have resided" and are based on the happenstance of plaintiff's current residence are insufficient to support specific jurisdiction. *Walden*, 134 S.Ct. at 1125.

In *Morrill*, the defendants mailed pleadings, sent discovery requests, and filed civil actions in Arizona to have deposition subpoenas issued for the plaintiffs related to litigation in Nevada. 873 F.3d at 1142-43. Because these contacts "involved very limited communications in Arizona, all of which arose out of and were component parts of the Nevada litigation," the Ninth Circuit dismissed plaintiffs' complaint for lack of personal jurisdiction. *Id.* at 1144.

Here, plaintiff contends that defendants targeted Nevada by sending FedEx mailings and electronic mail to her Las Vegas address. (ECF No. 18). Even though the defendants initiated contacts with a Nevada resident through certified mailings, those correspondences "arose out of and were component parts of" the Louisiana domestic court actions. *See Morrill*, 873 F.3d at 1143. Additionally, any links to Nevada, including correspondences related to the Louisiana litigation, occurred because the plaintiff unilaterally moved from Mississippi to Nevada. *See Hanson*, 357 U.S. at 253.

Moreover, plaintiff notes that defendants retained Nevada counsel for representation in this matter. (ECF No. 18). Retention of Nevada counsel for legal services is insufficient to support specific jurisdiction because plaintiff's tort claims do not "arise out of or relate to" defendants' hiring of Nevada counsel. *See Schwarzenegger* 374 F.3d at 802 (holding that in order to assert specific jurisdiction, defendant's claim must arise out of or relate to defendant's forum related activities).

Plaintiff has failed to make a prima facie showing of sufficient "minimum contacts" with the forum state required for personal jurisdiction over the defendants. *See Int'l Shoe Co.*, 326 U.S. at 316; *Schwarzenegger* 374 F.3d at 807. Accordingly, the court will grant defendants' motion to dismiss for lack of personal jurisdiction.

*b. Venue*

James C. Mahan
U.S. District Judge

- 7 -

Defendants alternatively request that this court grant their motion to change venue. (ECF No. 12). Because this court will grant defendants' motion to dismiss, defendants' motion to change venue is moot. The court will deny the motion.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss (ECF No. 10) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion to change venue (ECF. No. 12) be, and the same hereby is, DENIED as moot.

DATED May 30, 2018.

                                                                       _____
                                                                       UNITED STATES DISTRICT JUDGE